UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **JAMES LARSEN, individually** | § | **Docket No.** ___2:18-cv-1221___ |
| **and on behalf of all others similarly** | § | |
| **situated,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Plaintiff,** | § | |
| | § | **CLASS/COLLECTIVE ACTION** |
| **v.** | § | **PURSUANT TO 29 U.S.C. § 216(b)/** |
| | § | **FED. R. CIV. P. 23** |
| **EDGEMARC ENERGY** | § | |
| **HOLDINGS, LLC** | § | |
| | § | |
| **Defendant.** | § | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I.   SUMMARY

1.      Plaintiff James Larsen ("Larsen") brings this lawsuit to recover unpaid overtime wages and other damages from EdgeMarc Energy Holdings, LLC ("EdgeMarc" or "Defendant") under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code §4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. §333.101 *et seq.* (the "PMWA").

2.      EdgeMarc is an oil and natural gas company operating primarily in Pennsylvania, Ohio, and West Virginia.[1] To do so, EdgeMarc employs oilfield personnel to carry out its work.

3.      Larsen and the other workers like him regularly worked for EdgeMarc in excess of forty (40) hours each week.

4.      But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

---

[1]      http://www.edgemarcenergy.com/

5.      Instead of paying overtime as required by the FLSA, the Ohio Wage Acts, and the PMWA, EdgeMarc improperly classified Larsen and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

6.      This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II.      JURISDICTION AND VENUE

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8.      The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because EdgeMarc's corporate headquarters are located in this District.

## III.      THE PARTIES

10.      Larsen worked for EdgeMarc in 2017 as a Company Man, otherwise known an Drilling Consultant or Wellsite Supervisor.

11.      Throughout his employment with EdgeMarc, Larsen was paid a day-rate with no overtime compensation and was classified as an independent contractor.

12.      Larsen's consent to be a party plaintiff has been filed with the Court as Exhibit A.

13.      Larsen brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by EdgeMarc's day-rate system. EdgeMarc paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA, the Ohio Wage Acts, and the PMWA.

2

14.     The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> CURRENT AND FORMER INDEPENDENT CONTRACTORS WORKING FOR OR ON BEHALF OF EDGEMARC WHO WERE PAID A DAY RATE WITHIN THREE YEARS OF THE DATE OF THE FILING OF THE COMPLAINT ("Putative Class Members")

15.     Larsen also seeks class certification of such a class under FED. R. CIV. P. 23, under the Ohio Wage Acts, and under the PMWA.

16.     Defendant EdgeMarc Energy Holdings, LLC is a Delaware corporation doing business throughout the United States, including in Pennsylvania and Ohio. EdgeMarc may be served at its principal place of business or headquarters at 1800 Main Street, Suite 220, Canonsburg, PA 15317.

## IV.     COVERAGE UNDER THE FLSA

17.     At all times hereinafter mentioned, EdgeMarc has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     At all times hereinafter mentioned, EdgeMarc has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all times hereinafter mentioned, EdgeMarc has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

20.     At all times hereinafter mentioned, Larsen and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

21.     As will be shown through this litigation, EdgeMarc treated Larsen the Putative Class Members as employees and uniformly dictated the pay practices Larsen and its other employees (including its so-called "independent contractors") were subjected to.

22.     EdgeMarc's misclassification of Larsen as an independent contractor does not alter his status as an employee for purposes of the FLSA, the Ohio Wage Acts, and the PMWA.

## V.     FACTS

23.     EdgeMarc is an oil and natural gas company operating primarily in Pennsylvania, Ohio, and West Virginia.  To complete their business objectives, Defendant hires personnel to perform work as independent contractors.

24.     Many of these individuals worked for EdgeMarc on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

25.     EdgeMarc classified the Putative Class Members as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

26.     For example, Larsen worked for EdgeMarc in 2017. Throughout his employment with EdgeMarc, he was classified as an independent contractor and paid on a day-rate basis.

27.     The work Larsen performed was an essential and integral part of EdgeMarc's core business.

4

28.     During Larsen's employment with EdgeMarc while he was classified as an independent contractor, EdgeMarc and/or the company it contracted with exercised control over all aspects of his job.

29.     EdgeMarc did not require any substantial investment by Larsen in order for him to perform the work required of him.

30.     EdgeMarc determined Larsen's opportunity for profit and loss.   Lasen was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform their job duties.

31.     EdgeMarc and/or the company it contracted with controlled all the significant or meaningful aspects of the job duties performed by Plaintiff.

32.     EdgeMarc and/or the company it contracted with determined the hours and locations Larsen worked, tools used, and rates of pay received.

33.     Even though Larsen often worked away from EdgeMarc's offices without the presence of a direct EdgeMarc supervisor, EdgeMarc still controlled all aspects of Larsen's job activities by enforcing mandatory compliance with EdgeMarc's and/or its client's policies and procedures.

34.     No real investment was required of Larsen to perform his job.

35.     More often than not, Larsen utilized equipment provided by EdgeMarc and/or its clients to perform his job duties.   Larsen did not provide the equipment they worked with on a daily basis.

36.     EdgeMarc and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Larsen worked.

37.     Larsen did not incur operating expenses like rent, payroll, marketing, and insurance.

38.     Larsen was economically dependent on EdgeMarc during his employment.

39.     EdgeMarc directly determined Larsen's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for EdgeMarc.

40.     EdgeMarc directly determined Larsen's opportunity for profit and loss.  Larsen's earning opportunities were based on the number of days EdgeMarc scheduled him to work.

41.     Very little skill, training, or initiative was required of Larsen to perform his job duties.

42.     Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Defendant and/or its clients. Virtually every job function was pre-determined by Defendant and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

43.     Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

44.     The Putative Class Members did not have any supervisory or management duties.

45.     Larsen was not employed by Defendant on a project-by-project basis.  In fact, while Larsen was classified as an independent contractor, he was regularly on call for Defendant and/or its clients and was expected to drop everything and work whenever needed.

46.     All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

47.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

48.     EdgeMarc's policy of failing to pay their independent contractors, including Plaintiff, overtime violates the FLSA, the Ohio Wage Acts, and the PMWA because these workers are, for all purposes, employees performing non-exempt job duties.

49.     It is undisputed that the contractors are operating oilfield machinery, performing manual labor, and working long hours out in the field.

50.     Because Larsen (and EdgeMarc's other independent contractors) was misclassified as an independent contractor by EdgeMarc, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

51.     EdgeMarc's day-rate system violates the FLSA, the Ohio Wage Acts, and the PMWA because Larsen and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI.    FLSA VIOLATIONS

52.     As set forth herein, EdgeMarc has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

53.     EdgeMarc knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. EdgeMarc's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

54.     Accordingly, Larsen and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## VII.   OHIO WAGE ACT VIOLATIONS

55.     Larsen brings this claim under the Ohio Wage Act as a Rule 23 class action.

56.     The conduct alleged violates the Ohio Wage Act (O.R.C. §§4111).

57.     At all relevant times, EdgeMarc was subjected to the requirements of the Ohio Wage Act.

58.     At all relevant times, EdgeMarc employed Larsen and each Class Member with Ohio state law claims as an "employee" within the meaning of the Ohio Wage Act.

59.     The Ohio Wage Act requires employers like EdgeMarc to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Larsen and each member of the Ohio Wage Act Class are entitled to overtime pay under the Ohio Wage Acts.

60.     EdgeMarc had a policy and practice of misclassifying Larsen and each member of the Ohio Wage Act class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

61.     Larsen and each member of the Ohio Wage Act Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

62.     Larsen and each member of the Ohio Wage Act Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by EdgeMarc, as provided by the Ohio Wage Act.

## VIII.   PMWA VIOLATION

63.     Larsen brings this claim under the PMWA as a Rule 23 class action.

64.     The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

65.     At all relevant times, EdgeMarc was subject to the requirements of the PMWA.

66.     At all relevant times, EdgeMarc employed Larsen and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

67.     The PMWA requires employers like EdgeMarc to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week.  Larsen and each member of the Pennsylvania class are entitled to overtime pay under the PMWA.

68.     EdgeMarc had a policy and practice of misclassifying Larsen and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

69.     Larsen and each member of the Pennsylvania class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

70.     Larsen and each member of the Pennsylvania class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by EdgeMarc, as provided by the PMWA.

## IX.     CLASS AND COLLECTIVE ACTION ALLEGATIONS

71.     Larsen incorporates all previous paragraphs and alleges that the illegal pay practices EdgeMarc imposed on Larsen were likewise imposed on the Putative Class Members.

72.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, the Ohio Wage Acts, and the PMWA.

73.     Numerous other individuals who worked with Larsen indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

74.     Based on his experiences and tenure with EdgeMarc, Larsen is aware that EdgeMarc's illegal practices were imposed on the Putative Class Members.

9

75. The Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

76. EdgeMarc's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

77. Larsen's experiences are therefore typical of the experiences of the Putative Class Members.

78. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

79. Larsen has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Larsen has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

80. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

81. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and EdgeMarc will reap the unjust benefits of violating the FLSA and applicable state labor laws.

82. Furthermore, even if some of the Putative Class Members could afford individual litigation against EdgeMarc, it would be unduly burdensome to the judicial system.

83. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

84. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.      Whether EdgeMarc employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA, the Ohio Wage Acts, and the PMWA;

b.      Whether the Putative Class Members were improperly misclassified as independent contractors;

c.      Whether EdgeMarc's decision to classify the Putative Class Members as independent contractors was made in good faith;

d.      Whether EdgeMarc's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

e.      Whether EdgeMarc's violation of the FLSA, theOhio Wage Acts, the PMWA was willful; and

f.      Whether EdgeMarc's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

85.     Larsen's claims are typical of the claims of the Putative Class Members. Larsen and the Putative Class Members sustained damages arising out of EdgeMarc's illegal and uniform employment policy.

86.     Larsen knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

87.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## X.      JURY DEMAND

88.     Larsen demands a trial by jury.

## XI.      RELIEF SOUGHT

89.    WHEREFORE, Larsen prays for judgment against EdgeMarc as follows:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    For an Order pursuant to Section 16(b) of the FLSA finding EdgeMarc liable for unpaid back wages due to Larsen and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c.    For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

d.    For an Order appointing Larsen and his counsel as Class Counsel to represent the interests of both the federal and state law classes;

e.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    Michael A. Josephson
    PA Bar No. 308410
    Andrew W. Dunlap
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

AND

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**