# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | | |
|---|---|---|
| **JAMES LARSEN, individually** and on behalf of all others similarly situated, | § § § § | **Docket No. 2:18-cv-1221-MPK** **JURY TRIAL DEMANDED** |
| **Plaintiff,** | § § | |
| v. | § § § | **CLASS/COLLECTIVE ACTION** **PURSUANT TO 29 U.S.C. § 216(b)/** **FED. R. CIV. P. 23** |
| **EDGEMARC ENERGY HOLDINGS, LLC** | § § § | |
| **Defendant.** | § § | |

---

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

---

**Michael A. Josephson**
PA Bar No. 308410
**Andrew Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Joshua P. Geist**
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................................1

II.   PROCEDURAL HISTORY, INVESTIGATION, AND SETTLEMENT .................................2

III.  TERMS AND SCOPE OF THE SETTLEMENT .................................................................3

IV.   ARGUMENT ...................................................................................................................4

   A.   The FLSA settlement agreement should be approved by the court..........................4

     1.   A bona fide dispute exists...................................................................................4

     2.   The settlement is fair and reasonable.................................................................7

       a.   The complexity, expense, and likely duration of the litigation support approval of the settlement.......................................................................................................................8

       b.   The class supports to the settlement. ............................................................9

       c.   Settlement is appropriate at this stage of the proceedings. .........................9

       d.   The settlement is fair and reasonable in light of the risks to establishing liability and damages, and the risk of maintaining the class action through the trial.....................10

       e.   The settlement is reasonable in light of the best possible recovery and in light of all the attendant risks of litigation...................................................................................11

   B.   The Rule 23 class should be certified and settlement preliminarily ..........................13

     1.   The Standards and Procedures for Preliminary Approval...................................14

     2.   There Is a Strong Basis to Believe That the Settlement Is Fair, Reasonable, And Adequate 15

     3.   Certification of The Settlement Class Is Appropriate .........................................18

     4.   The Elements of Rule 23(A) Are Satisfied for Settlement Purposes Only in The Present Case ...............................................................................................................................18

       a.   Numerosity Under Rule 23(a)(1) .................................................................19

       b.   Commonality Under Rule 23(a)(2) ...............................................................19

       C.   Typicality Under Rule 23(a)(3).....................................................................20

       d.   Adequacy Under Rule 23(a)(4) ....................................................................21

     5.   The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes .................22

   C.   The Proposed Notice Provides Adequate Notice to Members of The Class .........................24

     1.   The Notice Satisfies Due Process .....................................................................24

     2.   The Proposed Class Notices Are Accurate, Informative and Easy to Understand.............25

   D.   A Final Fairness Hearing Should Be Scheduled ...............................................................26

V.    PRELIMINARY AWARD OF ATTORNEYS' FEES AND COSTS....................................................26

   A.   The Attorney Fees and Costs Requested Are Reasonable and Customary ..............................26

1.     The Size of The Fund Created and The Number of Beneficiaries, as Well As the Value of The Benefits Supports the Requested Fee ........................................................................................27

a.     The Skill and Efficiency of Class Counsel That Enabled Them to Obtain This Result Supports the Requested Fee ........................................................................................28

b.     The Awards in Similar Cases Supports the Requested Fee................................29

2.     Class Counsel's Costs Should Be Approved..........................................................30

B.     This Settlement Is on Par with Recent Settlements Involving Oil and Gas Companies.........30

**VI.     CONCLUSION** ................................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acevedo v. Brightview Landscapes, LLC*,
   No. CV 3:13-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017)................................................. 8
*Adams v. Bayview Asset Mgmt., LLC,*
   11 F.Supp.3d 474 (E.D.Pa. Feb. 26, 2014) ............................................................................. 4
*Adams v. Inter-Con Security Sys., Inc.*,
   No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)....................................... 25
*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................. 14, 18, 22
*Austin v. Pennsylvania Dep't of Corrs.*,
   876 F.Supp 1437 (E.D. Pa. 1995) ......................................................................... 11, 12, 16
*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994)...................................................................................................... 19
*Barnes v. American Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998)................................................................................................... 19
*Belt v. EmCare, Inc.*,
   444 F.3d 403 (5th Cir. 2006) ............................................................................................... 10
*Blondery Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1992).................................................................................................. 20
*Bogosian v. Gulf Oil Corp.*,
   561 F.2d 434 (3d Cir. 1977).................................................................................................. 20
*Bredbenner v. Liberty Travel, Inc.*,
   2011 WL 1344745 (D.N.J. Apr. 8, 2011) ......................................................................... 29, 30
*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945)................................................................................................................ 5
*Brumley v. Camin Cargo Control, Inc.*,
   C.A. 2:08-cv-01798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012)....................................... 4, 29
*Chemi v. Champion Mortg.*,
   C.A. 05-cv-1238, 2009 WL 1470429 (D.N.J. May 26, 2009) ............................................... 28
*Chiang v. Veneman*,
   385 F.3d 256 (3d Cir. 2004)................................................................................................... 19
*Cook v. Rockwell Int'l Corp.*,
   151 F.R.D. 378 (D. Colo. 1993) ........................................................................................... 21
*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ......................................................................................... 12, 16
*Craig v. Rite Aid Corp.*,
   No. 4:08-CV-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013)................................................ 9
*Creed v. Benco Dental Supply Co.*,
   C.A. 3:12-cv-01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013)...................................... 5
*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000).......................................................................................... 29
*Davis v. Abercrombie & Fitch Co.*,
   No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552 (S.D.N.Y. June 2, 2009) ........................ 25

iv

*Deitz v. Budget Renovations & Roofing, Inc.*,
    No. 4:12-CV-0718, 2013 WL 2338496 (M.D. Pa. May 29, 2013)...................................... 7, 8, 9
*Diaz v. Scores Holding Co., Inc.*,
    C.A. 1:07-cv-08718, 2011 WL 6399468 (S.D.N.Y. July 11, 2011) ........................................ 5
*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ........................................................................................ 22
*Erie County Retirees Assoc. v. County of Erie. Pa.*,
    192 F. Supp. 2d 369 (W.D. Pa. 2002) ................................................................................. 29
*Evans v. Jeff D.*,
    475 U.S. 717 (1986)............................................................................................................ 5
*Ewing v. First Energy Corp.*,
    No. 2:17-CV-01573, 2018 WL 6715725 (W.D. Pa. Dec. 21, 2018) .................................... 7
*Fein v. Ditech Fin., LLC*,
    No. 5:16-CV-00660, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017)...................................... 9
*Fisher Brothers v. Phelps Dodge Indus., Inc.*,
    604 F. Supp. 446 (E.D. Pa. 1985) ........................................................................... 11, 13, 16
*Galt v. Eagleville Hosp.*,
    310 F. Supp. 3d 483 (E.D. Pa. 2018) ........................................................................ 8, 9, 10
*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 ..................................................................................................................... 20
*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir.1975).......................................................................................... 8, 15
*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000).............................................................................................. 27
*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 18
*Hochschuler v. G.D. Searle & Co.*,
    82 F.R.D. 339 (N.D. Ill. 1978).......................................................................................... 22
*In re Asbestos Sch. Litig.*,
    104 F.R.D. 422 (E.D. Pa. 1984)............................................................................. 19, 20, 21
*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006).............................................................................................. 27
*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005).............................................................................................. 27
*In re Chickie's & Pete's Wage & Hour Litig.*,
    2014 WL 911718 (E.D.Pa. Mar.7, 2014) ............................................................................ 8
*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
    410 F. Supp. 659 (D. Minn. 1974)........................................................................... 11, 12, 16
*In re Diet Drugs Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009)......................................................................................... 26, 27
*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)......................................................................................... passim
*In re Inter-Op Prosthesis Liab. Litig.*,
    204 F.R.D. 359 (N.D. Ohio 2001) ............................................................................... 13, 17
*In re Linerboard Antitrust Litig.*,
    292 F.Supp.2d 631 (E.D. Pa. 2003) ................................................................................... 17
*In re M.L. Stern Overtime Litig.*,
    2009 WL 995864 (S.D. Cal. Apr. 13, 2009)....................................................................... 25

*In re NASDAQ Market Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1999) ................................................................ 13, 18
*In re Prudential Ins. Co.*,
  148 F.3d 283 (3rd Cir.1998) ........................................................................ passim
*In re Sugar Industry Antitrust Litig.*,
  73 F.RD. 322 (E.D. Pa. 1976) ........................................................................ 22
*In re Telectronics Pacing Systems*,
  172 F.RD. 271 (S.D Ohio 1997) ................................................................ 22, 23
*Keller v. TD Bank, N.A.*,
  2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) ...................................................... 10
*Kilgo v. Bowman Transp., Inc.*,
  789 F.2d 859 (11th Cir. 1986) .......................................................................... 19
*Lachance v. Harrington*,
  965 F.Supp. 630 (E.D. Pa. 1997) .................................................................... 10
*Lake v. First National Bank*,
  900 F. Supp. 726 (E.D. Pa. 1995) .................................................................... 17
*Lewis v. Curtis*,
  671 F.2d 779 (3d Cir. 1982) ............................................................................. 21
*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
  149 F.R.D. 65 (D.N.J. 1993) ............................................................................ 19
*Lignore v. Hosp. of Univ. of Pa.*,
  C.A. 2:04-cv-05735, 2007 WL 1300733 (E.D.Pa.2007) ...................................... 4
*Lliguichuzhca v. Cinema 60, LLC*,
  948 F. Supp. 2d 362 (S.D.N.Y. 2013) ................................................................ 5
*Lynn's Food Stores Inc. v. United States Dept. of Labor*,
  679 F.2d 1350 (11th Cir.1982) .......................................................................... 4
*Lyons v. Gerhard's Inc.*,
  C.A. 2:14-cv-06693, 2015 WL 4378514 (E.D. Pa. July 16, 2015) ........................ 7
*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir.1997) ............................................................................... 20
*Martin v. Selker Bros.*,
  949 F.2d 1286 (3d Cir. 1991) ............................................................................. 6
*McGee v. Ann's Choice, Inc.*,
  2014 WL 2514582 (E.D.Pa. June 4, 2014) .......................................................... 7
*McMahon v. Olivier Cheng Catering & Events, LLC*,
  C.A. 1:08-cv-08713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................ 5
*Morris v. Penn Mut. Life Ins. Co.*,
  1989 WL 14063 (E.D.Pa.1989) .......................................................................... 4
*Oh v. AT&T Corp.*,
  225 F.R.D. 142 (D.N.J. 2004) ........................................................................... 30
*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) .......................................................................................... 13
*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. 2012) ........................................................................ 12
*Rouse v. Comcast Corp.*,
  No. CIV.A. 14-1115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015) ...................... 12
*Roussell v. Brinker Int'l, Inc.*,
  *2011* WL 4067171 (5th Cir. Sept. 14, 2011) .................................................... 10

*Slanina v. William Penn Parking Corp.*,
   106 FRD 419 (W.D. Pa. 1984) .................................................................. 19
*Slomovics v. All For a Dollar, Inc.*,
   906 F.Supp. 146 (E.D.N.Y. 1995) ........................................................... 17
*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) .................................................................... 15
*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) .................................................................. 25
*Vargas v. Gen. Nutrition Centers, Inc.*,
   2015 WL 4155449 (W.D. Pa. Mar. 20, 2015) ......................................... 4
*Walsh v. Great Atlantic & Pacific Tea Co.*,
   726 F.2d 956 (3d Cir. 1983) .................................................................... 15
*Weiss v. Mercedes-Benz of N Am. Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995) ............................................................ 17
*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984) ............................................................ 20, 21
*Wetzel v. Liberty Mut. Ins. Co.*,
   508 F.2d 239 (3d Cir. 1975) ............................................................ 19, 21
*Williams v. Aramark Sports, LLC*,
   2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) ........................................... 29
*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) ................................................................................ 13
*Wright v. Linkus Enterprises, Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ............................................................ 25
*Young v. Tri Cty. Sec. Agency, Inc.*,
   No. CIV.A. 13-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014) ........... 9
*Zinberg v. Washington Bancorp, Inc.*,
   138 F.R.D. 397 (D.N.J. 1990) ................................................................ 19

## Statutes

29 U.S.C. § 216(b) ..................................................................................... passim
29 U.S.C. § 216(c) ............................................................................................. 4
Ohio Rev. Code § 4111.01 .................................................................................. 1
Ohio Rev. Code § 4113.15 .................................................................................. 2

## Rules

FED. R. CIV. P. 23 ..................................................................................... passim
Fed. R. Civ. P. 23(h) ....................................................................................... 26
Rule 23(A) ................................................................................................. passim
Rule 23(b)(3) ............................................................................................ 14, 22
Rule 23(c)(2)(B) .............................................................................................. 25
Fed. R. Civ. P. 23(e) ............................................................................. 14, 15, 25

## I.    INTRODUCTION

Plaintiff James Larsen ("Plaintiff" or "Larsen") files this Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement ("Motion for Preliminary Approval") and in support would show as follows:

After months of extensive negotiations, interviews, discussions, information gathering from numerous class members, data review, document production, analysis, and a full day mediation with experienced wage and hour mediator Carole Katz, the Parties reached a settlement of the wages claims at issue in this lawsuit, as memorialized in the attached Settlement Agreement and Release (the "Settlement Agreement"). *See* Exhibit 1. The settlement provides for up to $1.2 million to resolve the wage and hour claims of the Plaintiff, Opt-in Plaintiffs, and all similarly situated contractors (collectively, "Settlement Class Members") who performed work for EdgeMarc Energy Holdings LLC between September 13, 2015 and the date of the preliminary approval order. The Settlement Class Members are listed by name on Exhibit 1-C.

As described in the Settlement Agreement, Exhibit 1, this is a hybrid Fair Labor Standards Act ("FLSA") collective and Rule 23 class action settlement. To effectuate the settlement, the Parties propose sending a Notice to the Settlement Class Members by mail and email, if applicable, that informs them of the terms of the settlement, their settlement share, and how to participate.

Settlement Class Members do not have to do anything to receive a settlement payment. All Settlement Class Members will receive a settlement payment so long as they do not opt-out or provide an objection that is sustained.

Further, Settlement Class Members' rights are only extinguished if they negotiate the settlement check. Those who do not negotiate their settlement checks will preserve their FLSA, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§ 4111.01 *et seq.*, ("the Ohio Wage Act"),

the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (collectively as the "Ohio Acts"), and Pennsylvania Minimum Wage Act ("PMWA") claims.

## II.    PROCEDURAL HISTORY, INVESTIGATION, AND SETTLEMENT

On September 13, 2018, Larsen filed this class and collective action lawsuit against Defendant EdgeMarc Energy Holdings, LLC ("Defendant" or "EdgeMarc") alleging violations of the FLSA, Ohio Acts, and PMWA. ECF 1.  Larsen and the Settlement Class Members sought damages for unpaid wages, unpaid overtime compensation, liquidated damages, other damages, attorneys' fees and litigation costs under the FLSA, Ohio Acts, and Pennsylvania wage and hour laws, and would request conditional certification under Section 216(b) of the FLSA and class certification under Federal Rule of Civil Procedure 23.

On December 20, 2018, the Parties participated in a full-day mediation in an effort to resolve this case on a class and collective action basis.  ECF 14.  In advance of mediation, EdgeMarc provided numerous compensation documents, spreadsheets, and other information regarding to the pay practices at issue. Plaintiffs' counsel Josephson Dunlap and Bruckner Burch, PLLC ("Class Counsel") were then able to review the information, prepare a damage analysis, and compile a spreadsheet with its assessment of back pay owed to each Settlement Class Member.

Class Counsel's investigation ultimately revealed that Plaintiff and his fellow workers consisted of wellsite supervisors, drilling consultants, and completions consultants colloquially known as "Company Men" ("Company Men"), which Plaintiff alleged performed largely technical and manual labor type job duties, routinely worked in excess of 40 hours per week, and were paid a day rate.

At mediation, after reviwing the information liability analyses exchanged, the Parties reached an ultimate settlement on behalf of all current and potential Company Men who performed work for EdgeMarc between September 13, 2015 to the present and were paid a day rate. As described in detail below, the settlement is intended to fully compensate Plaintiff and all current and potential Settlement

Class Members and satisfy all claims for back wages in the form of unpaid overtime, liquidated damages, attorneys' fees, and costs.

With the settlement finalized, the Parties now seek the Court's approval of the Settlement Agreement.

### III.    TERMS AND SCOPE OF THE SETTLEMENT

This settlement is designed to fully satisfy all claims by Plaintiff and the Settlement Class Members for compensation for the overtime hours allegedly worked but unpaid by EdgeMarc. *See generally* the Settlement Agreement attached as Exhibit 1. The Settlement Class Members will receive a notice of the class action settlement by mail and email, if applicable, including an estimated amount of the settlement to which they are entitled, and information regarding how to accept, reject, or object to the settlement. *See* Notice, attached as Ex. 1-A. Each Settlement Class Member will have the opportunity to object and attend the fairness hearing. Those who wish to participate in the settlement will be given thirty days to opt-out or object. If a Settlement Class Members does nothing, he or she will receive a settlement payment.

The breakdown of the settlement is as follows:

| | |
|---|---|
| Maximum Settlement Amount: | $1,200,000.00 |
| Attorney Fees: | $420,000.00 |
| Attorney Costs: | $25,000.00 |
| Enhancement Award: | $10,000.00 |
| Settlement Administration Costs: | $25,000.00 |
| Net Settlement Amount: | $720,000.00 |

The Settlement Class Members who accept their individual settlement award, will release any and all federal and state wage related claims against EdgeMarc. Those Settlement Class Members who

opt-out, submit an objection that is sustained, or do not cash the settlement award check, will have their claims under the PMWA, Ohio Acts, and FLSA preserved.

## IV.    ARGUMENT

### A.    The FLSA settlement agreement should be approved by the court

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216 (b). Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees in this Circuit: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC,* 11 F.Supp.3d 474, 476 (E.D.Pa. Feb. 26, 2014) (citing *Lynn's Food Stores Inc. v. United States Dept. of Labor,* 679 F.2d 1350, 1354 (11th Cir.1982)). In the latter situation, "a district court may enter a stipulated judgment after determining that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dino v. Pennsylvania,* C.A. 1:08–cv–01493, 2013 WL 4041681, at *3 (M.D.Pa. Aug. 8, 2013) (quoting *Lynn's Food Stores, Inc.,* 679 F.2d at 1352); *Vargas v. Gen. Nutrition Centers, Inc.*, C.A. 2:10-cv-00867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015).

### 1.    A *bona fide* dispute exists

A dispute is "*bona fide*" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.,* C.A. 2:04-cv-05735, 2007 WL 1300733, at *3 (E.D.Pa.2007) (quoting *Morris v. Penn Mut. Life Ins. Co.,* 1989 WL 14063, at *4 (E.D.Pa.1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching," *Brumley v. Camin Cargo Control, Inc.*, C.A. 2:08-cv-01798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's*

*Food,* 679 F.2d at 1354); *see also Creed v. Benco Dental Supply Co.,* C.A. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

Further, Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945).[1] This inherent inequality, of course, is diminished when workers are represented by experience counsel. Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co., Inc.,* C.A. 1:07-cv-08718, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* Absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotes omitted). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC,* C.A. 1:08-cv-08713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).

In the instant case, the Parties strenuously contested the claims and defenses asserted. Plaintiff alleged that the Company Men who performed work for EdgeMarc were misclassified as independent contractors, paid a day rate, and not paid overtime. ECF No. 1. Plaintiff alleged that this violation of

---

[1] *Brooklyn Savings Bank,* 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.,* 475 U.S. 717, 726-27 (1986)(in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

the FLSA exposed EdgeMarc to substantial liability for back wages, liquidated damages, attorney fees, and costs. 29 U.S.C. § 216 (b). *Id.*

EdgeMarc flatly denied that it employed plaintiff or any members of the purported class. ECF 10. Specifically, EdgeMarc alleged that the purported class members were independently contracted with Sierra Hamilton or similar third-party service providers with whom EdgeMarc had a contract. EdgeMarc contended that these companies, not it, were responsible for compensating and classifying Plaintiff and the other purported class members. *Id.*

The Parties also disputed whether Plaintiff and the class members qualified for any white collar exemptions such that the overtime requirements of the FLSA, Ohio Acts, or PMWA would not apply. Plaintiff argued that he and the class members were not guaranteed a salary, often worked in excess of 40 hours in a week. ECF No. 1. EdgeMarc denied that the Company Men were misclassified and argued such workers were not entitled to overtime pay. ECF No. 10.

This case is more difficult that the typical employee wage and hour case because, unlike the typical case, the burden of proof in this case rests primarily with the Plaintiff. Plaintiff contends he and the Company Men were "employees" of EdgeMarc, and they bear the burden to prove, under the economic realities test, that EdgeMarc is the "employer." *See Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) (holding that it is Plaintiff's burden to demonstrate employee status using the following elements: 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.).

The role of EdgeMarc's subcontractors or vendors makes this case more complicated than those involving direct or unequivocal employment relationships. Consequently, even EdgeMarc's contention that it was not a covered employer under applicable law had the possibility to disrupt litigation, postpone conditional certification, and restrict discovery. *See Ewing v. First Energy Corp.*, No. 2:17-CV-01573, 2018 WL 6715725 (W.D. Pa. Dec. 21, 2018)(imposing limitations on discovery prior to conditional certification to determine whether the defendant, rather than the subcontractor or staffing company, was an employer or joint employer under the FLSA).

The parties strongly disputed liability in this case and only through mediation were they able to reach a compromise. As a result of these filings and arguments, and as reflected in the supporting documentation, discovery, and motions in the instant suit, the current settlement before the Court is the result of a *bona fide* dispute.

**2.  <u>The settlement is fair and reasonable.</u>**

Courts presented with a proposed settlement of an FLSA claim engage in a two-part analysis. First, the Court must determine if the settlement is fair and reasonable to the employee or employees involved. *See McGee v. Ann's Choice, Inc.,* C.A. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D.Pa. June 4, 2014). If it is, the Court next considers "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *Id.* *4; *see also Lyons v. Gerhard's Inc.*, C.A. 2:14-cv-06693, 2015 WL 4378514, at *3-4 (E.D. Pa. July 16, 2015).

"It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (M.D. Pa. May 29, 2013) The standard for approval of FLSA settlements is comparatively lenient. "[U]nlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not 'negotiating around the clear FLSA requirements' via settlement."

*Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017). "In general, settlement is the preferred means of resolving litigation, and there remains a "strong presumption" in favor of finding a settlement fair. The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution" *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (internal citations omitted).

When evaluating whether a proposed settlement is fair and reasonable, courts in the Third Circuit often turn to the *Girish* test for evaluating proposed class or collective action settlement agreements. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975); *see also, e.g., In re Chickie's & Pete's Wage & Hour Litig.*, 2:12–cv–06820, 2014 WL 911718, at *3 (E.D.Pa. Mar.7, 2014). The nine factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quotation omitted). Here, the *Girsh* factors strongly favor final approval of the Settlement Agreement.

a.  The complexity, expense, and likely duration of the litigation support approval of the settlement.

"This first Girsh factor requires the Court to consider 'the probable costs, in both time and money, of continued litigation.'" *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). Cases requiring great expenditures of time, money, and other resources on behalf of the parties and the court are good candidates for settlement. *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5 (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 318 (3rd Cir.1998)). Here, despite the exchange of documents that has already occurred, both sides would require additional substantial discovery in order to place the case in a trial posture. Specifically, the Parties would require additional information related to the roles

and control by EdgeMarc's subcontractors or vendors, to support or contest the inevitable dispositive motions regarding employment status. Continued litigation would result in a significant expenditure of resources for the Parties and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Settlement is appropriate, and the court should not have to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. *See Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5.

   b.   The class supports to the settlement.

   This factor "attempts to gauge whether members of the class support the settlement." *Fein v. Ditech Fin., LLC*, No. 5:16-CV-00660, 2017 WL 4284116, at *9 (E.D. Pa. Sept. 27, 2017)(citing In re Prudential, 148 F.3d at 318). "Silence from the class is generally presumed to indicate agreement with the settlement terms." *Young v. Tri Cty. Sec. Agency, Inc.*, No. CIV.A. 13-5971, 2014 WL 1806881, at *6 (E.D. Pa. May 7, 2014)). No class members object to the proposed settlement, and the reaction of the class in this case strongly supports the approval of the settlement.

   c.   Settlement is appropriate at this stage of the proceedings.

   In evaluating the third *Girsh* factor, the Court assesses "the degree of case development that [C]lass [C]ounsel have accomplished prior to the settlement," in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Galt*, 310 F. Supp. 3d at 494; *see In re Gen. Motors*, 55 F.3d at 813. Here, adequate informal discovery was completed prior to mediation. Through mutual production, counsel reviewed numerous documents pertaining to payroll records and invoices foreach of the Settlement Class Members, as well as the contracts, invoices, and policies of EdgeMarc or its subcontractors or vendors in order to to investigate the factual support for the legal claims and defenses. Each side was cognizant of the relative strengths and weaknesses of their case during negotiations. The parties spent several months focused on these issues before

engaging in settlement discussions with an experienced mediator. This factor weighs in favor of approval.

    d.  <u>The settlement is fair and reasonable in light of the risks to establishing liability and damages, and the risk of maintaining the class action through the trial.</u>

The fourth, fifth, and sixth *Girsh* factors also strongly favor final approval of the parties' settlement agreement. The fourth and fifth *Girsh* factors require the Court to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Galt*, 310 F. Supp. 3d at 494 (E.D. Pa. 2018); *see In re Prudential*, 148 F.3d at 319. In balancing these considerations, the Court "should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case." *Keller v. TD Bank, N.A.*, No. CIV.A. 12-5054, 2014 WL 5591033, at *11 (E.D. Pa. Nov. 4, 2014). Trying this case would involve significant risks to the Settlement Class Members, as there is a substantial risk of a significantly reduced recovery or no recovery at all in this action. EdgeMarc maintains that it has significant defenses to liability, including that the Company Men are not its employees, were properly classified as independent contractors, were properly compensated, and that it acted in good faith. *See Lachance v. Harrington*, 965 F.Supp. 630, 639 (E.D. Pa. 1997)("The court must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action").

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years.[2] Both sides have had considerable experience

---

[2] Plaintiffs' counsel has served as lead counsel in numerous of large-scale wage and hour class/collective actions. *See, e.g., Roussell v. Brinker Int'l, Inc.*, C.A. 2:09-cv-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

in prosecuting, defending, and settling federal and state wage and hour claims, and, in this case, were well informed as to the facts and circumstances of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Additionally, the class faces significant risk under the sixth *Girsh* factor that it can be maintained through trial. Plaintiff has not moved for conditional certification, but it is anticipated that EdgeMarc will oppose this motion.  Plaintiff also anticipates that EdgeMarc will move for summary judgment on the issue of its liability under the FLSA, and/or move to join additional parties under Rule 19 which may lead to dismissal if those parties may not be joined. Such challenges will increase both the length and expense of the litigation. These factors, taken together, indicate that continued litigation presents a risk to recovery for the Plaintiff and the class, and that settlement is reasonable in light of these risks.

e.  <u>The settlement is reasonable in light of the best possible recovery and in light of all the attendant risks of litigation</u>.

The eighth and ninth *Girsh* factors "ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. In order to assess the reasonableness of a proposed settlement seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing,

---

EdgeMarc is represented by experienced employment litigation specialists, including Brian D. Balonick, from Cozen O'Connor.

should be compared with the amount of the proposed settlement." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313 (E.D. Pa. 2012)(citing *In re Prudential*, 148 F.3d at 322). Had the case been pursued through trial and been successful on all claims, the recovery here may have been greater than the settlement. "However, [i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Rouse v. Comcast Corp.*, No. CIV.A. 14-1115, 2015 WL 1725721, at *10 (E.D. Pa. Apr. 15, 2015). Even if the "best possible recovery" significantly exceeds the Settlement amount, this award could only be attained by continued litigation and after a favorable result from each of the remaining stages of litigation, including possible dipositive motions, threats of decertification, trial and a possible appeal. These risks far outweigh the present value of an immediate, and not inconsiderable, cash settlement.

Importantly, the Settlement was the result of an all-day mediation sessions between the parties with the assistance of experienced wage and hour mediator, Carole Katz, who specializes in mediation of class, collective, and individual employment cases, including wage and hour cases, under the FLSA and state analogues. https://www.carolekatz.com/faqs. The Settlement was negotiated by attorneys who have been vigorously prosecuting this and similar claims for many years. These attorneys have had considerable experience in federal and state wage and hour claims, and in this case both parties were aware of and negotiated based upon the inherent risks with pursuing the case to trial. Both parties feel that the Settlement of $1,200,000.00 is reasonable in light of these risks and the possible damages recoverable by the class. *See Austin*, 876 F.Supp at 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 787-88 (3d Cir. 1995); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.");

*Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."). These factors favor approval of the Settlement.

There is no foundation to dispute the fairness of this proposed Settlement which resulted from arm's length negotiations. The proposed Settlement does not grant preferential treatment to the class representatives and it does not provide excessive compensation to counsel. *See In re Inter-Op Prosthesis Liab. Litig.,* 204 F.R.D. 359, 379 (N.D. Ohio 2001). Accordingly, the standards for approval are met in this case and the Court should grant Plaintiff's motion in its entirety. *See also In re NASDAQ Market Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

### B. The Rule 23 class should be certified and settlement preliminarily

Plaintiff requests preliminary approval of the Rule 23 settlement agreement and Rule 23 Certification. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II"). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. Federal Rule 23(e) provides that the Court must approve any settlement of a class action. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("GM Trucks"). Indeed, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Id.* at 784. The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is fair and should be preliminarily approved..

1. **The Standards and Procedures for Preliminary Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
>> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>>
>> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>>
>> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>>
>> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>>
>> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed.R.Civ.P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *Prudential II*, 148 F.3d at 316.

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Preliminary approval permits notice of the hearing on final settlement approval to be given to the Settlement Class Members, at which time the Settlement Class

Members and the settling parties may be heard with respect to final approval. *Id.* at 322. Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled. *Id.* at 320. In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id.* at 320-21.

In deciding whether a settlement should be preliminarily approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied. *See* MANUAL FOURTH §21.633, at 321 ("Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."). The standard for final approval of a Rule 23 class action settlement consists of showing that the settlement is fair, reasonable, and adequate. *Prudential II*, 148 F.3d at 316-17; *GM Trucks*, 55 F.3d at 785; *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). As detailed below, the Settlement is fair, reasonable, and adequate.

2. **There Is a Strong Basis to Believe That the Settlement Is Fair, Reasonable, And Adequate**

The Third Circuit has adopted the following four-factor test to determine the preliminary fairness of a class action settlement:

(1) the negotiations occurred at arm's length;

(2) there was sufficient discovery;

(3) the proponents of the settlement are experienced in similar litigation; and

(4) only a small fraction of the class objected.

*GM Trucks*, 55 F.3d at 785.

15

The Settlement Agreement meets all these tests. It is beyond dispute that this settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties and after more than sufficient discovery and litigation had been undertaken. *See* Declaration of Andrew W. Dunlap ("Dunlap Dec.") at ¶¶ 3-21 attached as Exhibit 2. The settlement was negotiated on behalf of Plaintiff by a team of attorneys who have been vigorously prosecuting this and similar claims for many years. *Id.* These attorneys have had considerable experience in prosecuting wage and hour claims previously, both federal and state claims, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. EdgeMarc is also represented by counsel experienced in collective and class employment litigation. Brian Balonick, counsel from Cozen O'Connor, has represented and currently represent employers in similar cases in many jurisdictions. *Id.* Thus, the arm's length consideration is met, which is often shaped by the experience and reputation of counsel, who have researched the issues and are knowledgeable regarding the facts of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *GM Trucks*, 55 F.3d at 787-88; *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

This settlement was, moreover, specifically negotiated by experienced counsel to meet all the requirements of the FLSA collective action provisions and the class action provisions of Rule 23, and specifically to provide administrative procedures to assure to all Settlement Class Members equal and sufficient due process rights. Accordingly, the settlement was informed by the vigorous prosecution of the case by experienced and qualified counsel and was not the product of collusive

dealings. Further, continued litigation would be long, complex and expensive, and a burden to the Court. *See Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered). A trial on the merits would be very expensive for both Larsen and EdgeMarc, and would not even necessarily end the litigation, as the losing party would have the right to appeal. *See In re Linerboard Antitrust Litig.,* 292 F.Supp.2d 631, 642 (E.D. Pa. 2003) (where the protracted nature of the action would cause a lengthy delay in recovery, the "substantial and immediate benefits" to class members favored approval); *Slomovics v. All For a Dollar, Inc.*, 906 F.Supp. 146, 149 (E.D.N.Y. 1995) (where litigation had potential to be lengthy, and was likely to be expensive, settlement was in best interest of class members).

Further, the settlement was based on an exchange of a substantial amount of information pertaining to EdgeMarc's and its vendor's actual pay practices, payroll records, and virtually all of the data for the class. *See* Ex. 2 (Dunlap Decl.) at ¶17. This information exchange allowed the Parties to reach a fair settlement that provides just compensation to the workers without the risk and costs associated with certification proceedings, trial and an eventual appeal.

Finally, there is no reason to doubt the fairness of the proposed Settlement Agreement as resulting from arm's length negotiations. Not only was the Settlement Agreement the result of good faith, arm's length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated with the substantial assistance from an experienced wage and hour mediator Carole Katz. *See* Ex. 2 at ¶¶ 20-21. Indeed, the proposed Settlement Agreement does not unduly grant preferential treatment to the class representative and it does not provide excessive compensation to counsel. *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). Accordingly, the standards for preliminary approval are met in this case

and the Court should grant Plaintiff's motion in its entirety. *See also In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

### 3. Certification of The Settlement Class Is Appropriate

Pursuant to the Settlement Agreement, and in accordance with the model of other similar wage and hour cases that counsel have resolved in the federal courts, the Parties have stipulated, for settlement purposes only, to a class consisting of Plaintiff, Opt-in Plaintiffs, and all similarly situated contractors who performed work for EdgeMarc as Company Men between September 13, 2015 and the date of the preliminary approval order. Specifically, the class members are listed by name on Exhibit 1-C.

The Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *See Amchem*, 521 U.S. at 591; *Prudential II*, 148 F.3d at 283; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Here, Plaintiff submits the elements of Rule 23 are met with respect to the proposed settlement, which, accordingly, warrants settlement class certification.

### 4. The Elements of Rule 23(A) Are Satisfied for Settlement Purposes Only in The Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the Representative Plaintiffs must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a); *see e.g. Barnes v. American Tobacco Co.,* 161 F.3d 127 (3d Cir. 1998); *Prudential II*, 148 F.3d at 308-09; *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975). Here, Plaintiff submits that all four elements are satisfied for purposes of certifying the settlement Class.

    a.   <u>Numerosity Under Rule 23(a)(1)</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.RD. 65, 73 (D.N.J. 1993) ("precise enumeration of the members of a class is not necessary."); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity."). Numerosity is satisfied here because the class includes approximately 51 individuals. *See Slanina v. William Penn Parking Corp.,* 106 FRD 419, 423 (W.D. Pa. 1984) (certifying class of 25 persons); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of class of at least 31 individual class members).

    b.   <u>Commonality Under Rule 23(a)(2)</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if Plaintiffs' grievances share common questions of law or of fact. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). A Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case. "Factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F .3d at 56; *Prudential II*, 148 F.3d 283. Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See* 1 A. Conte & H. Newberg, Newberg on Class Actions (Fourth), § 3.10, at 272-74 (2002); accord *Baby Neal*, 43 F.3d at 56. Commonality exists where the class claims arise "from a 'common nucleus of operative fact' regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984). As the Third Circuit has noted, this requirement is "not a high bar." *Chiang*

*v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004). According to Plaintiffs, commonality is met here insofar as the claims of all Settlement Class Members turn on the core common issue of whether EdgeMarc properly classified them as independent contractors who could legally be paid a day rate, without any salary. At least in the settlement context, this is sufficient to meet the Rule 23(a)(2) standard of commonality. Specifically, Plaintiffs, like their co-workers, were treated as independent contractors and only paid a day rate. They did not receive additional compensation for any hours worked over forty in a workweek. Thus, based on work experiences and the allegations against EdgeMarc, the commonality element is satisfied.

    c.   <u>Typicality Under Rule 23(a)(3)</u>

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. l3 (1982). The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *Id.*; *Prudential II*, 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litigation*, 104 F.R.D. at 429-30. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir.1997). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory." *Hayworth v. Blondery Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). In other words, typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 (3d Cir. 1984). Here, too, this

requirement is met by the proposed Settlement Class to the extent that the claims, for settlement purposes only, arise from a common course of conduct alleged by Plaintiffs, e.g., Defendant's alleged practice of failing to compensate Settlement Class Members for all hours worked as a result of the uniformly applied day rate practice.

    d.  <u>Adequacy Under Rule 23(a)(4)</u>

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit has ruled that:

> Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.

*Weiss*, 745 F.2d at 811, quoting *Wetzel.*, 508 F.2d at 247; *see also Prudential II*, 148 F.3d at 312. These two components are designed to ensure that absentee class members' interests are fully pursued. The existence of the elements of adequate representation are presumed and "the burden is on the defendant to demonstrate that the representations will be inadequate." *Asbestos School Litigation*, 104 F.R.D. at 430, *citing Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) (quoting 3 Newberg on Class Actions (Fourth), §7.24 at pp. 78-79 (2002)).

Adequacy is easily met here with regard to the Settlement Class Counsel's qualifications – Plaintiff's attorneys, proposed Settlement Class Counsel, are exceedingly experienced and competent in complex litigation and have an established track record in wage and hour cases. *See* Ex. 2 at ¶¶ 3-8. In addition, there is no evidence that Larsen has any interests inconsistent to that of the settlement class. Indeed, Plaintiffs dutifully assisted his Counsel in this case and meet the criteria for participation in this settlement. Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here for settlement purposes only, Plaintiff now turns to consideration of the factors which,

independently, justify class treatment of this action for present purposes under subdivision 23(b)(3) of the rule.

5. **The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes**

The proposed Class also meets the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed Class is sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *In re Sugar Industry Antitrust Litig.*, 73 F.RD. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978); *Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Systems*, 172 F.RD. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues, and if these issues are common to the class, common questions may be held to predominate over individual questions.

*See Id.*

In this case, common questions of law and fact predominate. Among the common questions of law and fact are:

a. Whether the Settlement Class Members were employed by EdgeMarc under the FLSA, PMWA or the Ohio Acts;

b. Whether EdgeMarc has engaged in a pattern or practice of not paying Settlement Class Members for all of the hours overtime for each hour in excess of forty hours in a single week;

c. Whether EdgeMarc has engaged in the alleged wage violations uniformly regardless of locations worked;

d. Whether EdgeMarc violated Pennsylvania law by failing to compensate Settlement Class Members for all hours worked in excess of forty hours in a single workweek;

e. Whether EdgeMarc violated Ohio law by failing to compensate Settlement Class Members for all hours worked in excess of forty hours in a single workweek;

f. Whether EdgeMarc is liable for unpaid wages and overtime pay, liquidated damages, attorneys' fees, costs and interest; and

g. Whether this lawsuit should be maintained as a class action based on EdgeMarc's violations of Pennsylvania law.

h. Whether this lawsuit should be maintained as a class action based on EdgeMarc's violations of Ohio law.

The superiority requirement is met because this settlement will resolve the pending lawsuits against EdgeMarc in a single, consolidated proceeding – obviating the need for multiple trials in multiple transferee venues – and, given Larsen's argument regarding commonality of claims relating to a standard policy,there would be little or no interest for each Settlement Class Member to proceed with their own cases. Indeed, the plan of distribution here treats all equitably by providing payments based upon length of employment, a distribution that makes particular sense in a case such as this. Accordingly, strictly for the purposes of settlement, the Parties agree that individual variations in the type or magnitude of damage suffered by individual Settlement Class Members should not affect

predominance, as the class representatives' position is that they have suffered the same type of damages – and seek the same type of relief – as all members of the proposed class.

Finally, resolution of this litigation by class settlement is superior to the individual adjudication of Settlement Class Members' claims for compensatory relief. The Settlement provides the Class with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured Settlement Class Member will obtain necessary and timely relief at the conclusion of the litigation process. Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in what could be a dozen or more separate trials, including trials in each of the lawsuits being settled herein. Accordingly, strictly for purposes of the settlement posture in which the case now stands, the Class is appropriate and should be certified for settlement purposes only.

### C.  The Proposed Notice Provides Adequate Notice to Members of The Class

### 1.  <u>The Notice Satisfies Due Process</u>

The Parties propose that a Settlement Administrator send, by First Class Mail, and email, if applicable, to each Settlement Class Member, as defined above and in the Settlement Agreement, the Notice attached hereto as Exhibit. 1-A.

The Parties propose that the Notice be sent to all known and reasonably ascertainable members of the Class based on EdgeMarc's records and the criteria described in detail in the Settlement Agreement. The notices will be sent by First Class Mail and Email. The Settlement Agreement provides that the Claims Administrator will endeavor to ensure that all members of the Class receive notice by taking all reasonable steps to trace the addresses of any member of the Class for whom a Notice Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches.

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable. *See also, e.g.,* *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'")(quoting FED.R.CIV.P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co.*, No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009)(approving issuance of notice to class using a similar method as applied here); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009)(finding similar mail procedure as applied here to be the "best notice practicable"); *Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007)(finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

2. **The Proposed Class Notices Are Accurate, Informative and Easy to Understand**

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the federal class or opt-out of the state class. *See Prudential II*, 148 F.3d at 326-27; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). Similarly, pursuant to Section 16(b) of the FLSA, class members are entitled to notice to afford them with an adequate opportunity to opt-into the Action. 29 U.S.C. § 216(b).

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Settlement, including the monetary and other relief the settlement will provide members of the Class, the procedures and deadlines for opting out of the of the Settlement Class and

submitting objections, the consequences of taking or foregoing the various options available to members of the Class, and the date, time and place of the final settlement approval hearing. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312. Pursuant to Fed. R. Civ. P. 23(h), the proposed Notice also sets forth the maximum amount of attorneys' fees and costs that may be sought by Plaintiff and his counsel. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.,* 4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39; MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.311-21.312.

### D. A Final Fairness Hearing Should Be Scheduled

The Court should schedule a final fairness hearing to determine that final approval of the Settlement is proper within the next 120 days. The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement. Accordingly, the Parties request that the Court schedule the final fairness hearing.

### V. PRELIMINARY AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to Rule 23(h) and Rule 54(d)(2), Class Counsel seeks an award of attorneys' fees in the amount of $420,000.00 and costs in the amount of $25,000.00 from the Maximum Settlement Fund created by the Settlement. Further, Larsen asks the Court to approve the estimated Settlement Administrator's costs of $25,000.00. After extensive negotiation, EdgeMarc agreed not to oppose Larsen's counsel's application for these payments and costs from the Maximum Settlement Fund. *See* Exhibit 1, Settlement Agreement.

### A. The Attorney Fees and Costs Requested Are Reasonable and Customary

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re*

*Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted). When calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *Prudential,* 148 F.3d at 333).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs.* 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *Prudential,* 148 F.3d at 342).

These factors support approval of the requested fee and are discussed below.

### 3. <u>The Size of The Fund Created and The Number of Beneficiaries, as Well As the Value of The Benefits Supports the Requested Fee</u>

The results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. Here, the $1,200,000.00 Settlement provides for a Net Settlement Fund that will be distributed to Settlement Class Members on a *pro rata* basis.

More specifically, the Maximum Settlement Amount is based on an analysis of each workweek that each Settlement Class Member worked for EdgeMarc during the relevant time period. The Maximum Settlement Amount represents a substantial portion of unpaid overtime damages owed to the Settlement Class Members. For these reasons, the Settlement creates a substantial benefit for members of the Settlement Class. Ex. 2 at ¶¶ 22-31.

   a.   The Skill and Efficiency of Class Counsel That Enabled Them to Obtain This Result
        Supports the Requested Fee

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience. *See* Ex. 2. at ¶¶3-8. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery. *Id.* at ¶ 34.

The Settlement reached with EdgeMarc, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA and state wage and hour law, is a reflection of Class counsel's experience. *See Id.* at ¶¶ 3-8. This Settlement was reached after (1) extensive fact discovery, including exchanging numerous pages of documents; (2) a notice and opt-in period; and (3) a full day of mediation in Pittsburg, Pennsylvania with experienced wage and hour mediator Carole Katz, which included follow up arm's length negotiations between counsel for the parties. *Id.* at ¶¶ 20-21.

28

The Settlement provides Larsen and members of the Settlement Classes with substantial benefits without having to wait for years of drawn out litigation. Accordingly, this factor favors the requested fee.

      b.  <u>The Awards in Similar Cases Supports the Requested Fee</u>

The requested fee is also consistent with awards in similar cases. *See* Ex. 2. at ¶ 32. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund. *See Brumley*, 2012 WL 1019337, at *12 (approving fee of one-third of the common fund and citing *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)).

Here, Class Counsel's request for one-third of the Maximum Settlement Fund falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. *See, e.g., Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (Eddy, J.) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) (same); *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) (same); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (approving an award of 32.6% of the Settlement fund); *Erie County Retirees Assoc. v. County of Erie, Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 150 (E.D. Pa. 2000) (concluding "that an award of one third of the Settlement fund is reasonable in consideration of other courts' awards"); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and median award was 33.3%). The

attorneys' fees request of one-third of the Settlement fund also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

### 4. **Class Counsel's Costs Should Be Approved**

In addition to being entitled to reasonable attorneys' fees, the FLSA, and Pennsylvania wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b); 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

Here, Class Counsel's costs are capped at $25,000.00. Class Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, travel for hearings, mediation, and client meetings, and Westlaw. *See* Ex. 2, at ¶ 33. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund *pro hac vice*." to be reasonable).

All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, EdgeMarc does not object to the request for costs.

### B. **This Settlement Is on Par with Recent Settlements Involving Oil and Gas Companies**

The Court should finally approve this Settlement because it is in line with recent wage and hour settlements involving oil and gas service companies. In *Terry v. Tri-State Wireline, LLC*, Judge Fischer approved a class and collective action settlement involving wireline operators paid a salary and a job bonus. C.A. 2:15-cv-00382-NBF (W.D. PA Jan. 14, 2016) at ECF No. 31. In that case, the Court

approved attorney fees of 35%, $25,000.00 in attorney costs, $5,500.00 in settlement administration costs, $20,000.00 in enhancement awards. The Court held that the settlement was substantial fair and reasonable under the applicable Third Circuit jurisprudence. *See also Frost v. Oil States Energy Services, LLC*, C.A. 4:15-cv-01100 (S.D. Tex. Nov. 19, 2015) at ECF 43. (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-00130-MRH (W.D. PA Oct. 30, 2015) at ECF 43 (approving a collective action settlement involving oil and gas employees alleging violations of the regular rate for purposes of calculating overtime); *Smiley, et al., v. ROC Service Company, LLC*, C.A. 2:14-cv-01539-CRE (W.D. PA Sept. 22, 2015) at ECF 53; (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Andrews, et al., v. Pacific Process Systems, Inc.*, C.A. 2:14-cv-01308-CRE (W.D. PA Sept. 10, 2015) (same).

## VI.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court (i) approve the form and content of the proposed Notice and the manner and method of distributing notice of this Settlement to the Class; (ii) direct the mailing and e-mailing of the Notice to members of the Class; (iii), preliminarily approve the Settlement, (iv) preliminarily certify the Class for purposes of Settlement only; (v) approve Class Counsel and the named Plaintiff to represent the Class; and (vi) set a date for a Hearing.

Respectfully submitted,

By: /s/ Andrew W. Dunlap
      **Michael A. Josephson**
      PA Bar No. 308410
      **Andrew Dunlap**
      Texas Bar No. 24078444
      (*Admitted Pro Hac Vice*)
      **JOSEPHSON DUNLAP LAW FIRM**
      11 Greenway Plaza, Suite 3050
      Houston, Texas 77005
      Tel: (713) 352-1100
      Fax: (713) 751-0030
      mjosephson@mybackwages.com
      adunlap@mybackwages.com

      AND

      **Joshua P. Geist**
      PA. I.D. No. 85745
      **GOODRICH & GEIST, P.C.**
      3634 California Ave.
      Pittsburgh, PA 15212
      Tel: 412-766-1455
      Fax: 412-766-0300
      josh@goodrichandgeist.com

      AND

      **Richard J. (Rex) Burch**
      Texas Bar No. 24001807
      Fed. Id. 21615
      (*Pending Pro Hac Vice*)
      **BRUCKNER BURCH, P.L.L.C.**
      8 Greenway Plaza, Suite 1500
      Houston, Texas 77046
      713-877-8788 – Telephone
      713-877-8065 – Facsimile
      rburch@brucknerburch.com

      **ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**


## CERTIFICATE OF CONFERENCE

I hereby certify that I have spoken with Counsel for Defendant and Defendant is in agreement with the contents of this Motion.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**