UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| JAMES LARSEN, individually and on behalf of all others similarly situated, | § § § § | Docket No. 2:18-cv-1221-MPK |
| | § | JURY TRIAL DEMANDED |
| Plaintiff, | § § | |
| | § | CLASS/COLLECTIVE ACTION |
| v. | § | PURSUANT TO 29 U.S.C. § 216(b)/ |
| | § | FED. R. CIV. P. 23 |
| EDGEMARC ENERGY HOLDINGS, LLC | § § § | |
| Defendant. | § § | |

---

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS**

---

**Michael A. Josephson**
PA Bar No. 308410
**Andrew Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Joshua P. Geist**
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................5

II.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...........................6

    A.   Overview of Terms.............................................................................................6
        1.   Settlement Fund ..............................................................................6
        2.   Allocation to the Settlement Class Members .................................7
        3.   Notice Provisions............................................................................7
        4.   Release of Claims ...........................................................................8
        5.   Payments Under the Settlement.......................................................8
    B.   The Settlement Should Be Given Final Approval By The Court............................8
        1.   The Standards for Final Approval Under Fed. R. Civ. P. 23 .............9

III.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ..13

    A.   The Elements of Rule 23(a) are Satisfied for Settlement Purposes.....................13
        1.   Numerosity Under Rule 23(a)(1) ................................................13
        2.   Commonality Under Rule 23(a)(2) ..............................................14
        3.   Typicality Under Rule 23(a)(3) ...................................................15
        4.   Adequacy Under Rule 23(a)(4) ...................................................16
    B.   The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes ................16

IV.     THE COURT SHOULD GIVE FINAL APPROVAL TO THE ENHANCEMENT
      AWARD FOR JAMES LARSEN .........................................................................17

V.      FINAL APPROVAL OF ATTORNEYS' FEES AND COSTS ....................................18

    A.   The Size of the Fund Created, the Number of Beneficiaries and the Value of
        The Benefits Conferred Support the Fees Requested ....................................19
    B.   The Skill and Efficiency of Class Counsel Led to the Results Obtained and
        Justify the Fee Requested ..............................................................................20
    C.   Awards in Similar Cases Supports the Requested Fee ...................................20
    D.   Class Counsel's Costs Should Be Approved.................................................22
    E.   The Positive Response of the Settlement Class Members Justifies the Fees and
        Costs Requested ...........................................................................................22
    F.   Approval of the Claims Administration Costs................................................23

VI.     CONCLUSION ...................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984)................................................10

*Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437, 1472 (E.D. Pa. 1995)...........................6

*Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ................................................10

*Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012)
(Fischer, J.).................................................................................17

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993) .....................................9

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ...........................................11

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .......................17

*Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011)..14

*Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12 (D.N.J. Mar.
26, 2012)..................................................................................16

*Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) ..........17

*Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) ...........16

*Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) ..............................................10

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ..............................3

*Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) ......................................12

*Cotton v.Hinton*, 559 F.2d 1326 (5th Cir. 1977) ...................................................6

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)..................................13

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)................................17

*Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002)
(McLaughlin, J.).............................................................................17

*Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) .......................6

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.l3 (1982) .................................11

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) .................................................5

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) ...............................15

*Hart, et al., v. KSW Environmental, LLC.*, C.A. 2:15-cv-659-AJS (W.D. Pa. May 24, 2016) ...............17

*Hayworth v. Blondery Seagraves & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).............................11

*Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-130-MRH (W.D. Pa. Oct. 30, 2015) ...........17

*In re AT& T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) ....................................14

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) ...................................14

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ......6

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).............................. 14, 15

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)........6

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009) ..............................4

*In re Janney Montgomery Scott LLC Financial Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *12
(E.D. Pa. Jul. 16, 2009) .....................................................................14

*In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 642 (E.D. Pa. 2003) .............................7

*In re Processed Egg Products Antitrust Litig.*, No. 08-md-2002, 2012 WL 2885924, at *18 (July 18, 2012) 9

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) ..................................5

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004) ............................9

*Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) .................................10

*Kirk v. DR Well Site Services, LLC, et al.*, C.A. 1:15-cv-116-BR (W.D. Pa. Nov. 22, 2016)................17

*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012)............................................13

*Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)......................................15

*Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) .....................................7

*Lewis v. Curtis,* 671 F.2d 779 (3d Cir. 1982) ...................................................................12

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.RD. 65, 73 (D.N.J. 1993) ....................10

*Marisol A. v. Giuliani,* 126 F.3d 372 (2d Cir.1997) ............................................................11

*Oh v. AT&T Corp.,* 225 F.R.D. 142, 154 (D.N.J. 2004) .........................................................18

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985) ................................................3

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25 (1968) ...4

*Raniere v. Citigroup Inc.,* 310 F.R.D. 211, 220 (S.D.N.Y. 2015) ..............................................14

*Rollison v. X-Chem, LLC, et al.,* C.A. 2:15-cv-43-MRH (W.D. Pa. Mar. 16, 2016) ..................................17

*Sakalas v. Wilkes Barre Hosp. Co.,* No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) .........................................................................................................14

*Sand v. Greenberg,* No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) ...........................14

*Slanina v. William Penn Parking Corp.,* 106 FRD 419, 423 (WD PA 1984) .......................................10

*Slomovics v. All For a Dollar, Inc.,* 906 F.Supp 146, 149 (E.D.N.Y. 1995) ......................................7

*Stivers v. Office Depot,* No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) ............................................17

*Swigart v. Fifth Third Bank,* 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014)...........................6

*Tenuto v. Transworld Sys., Inc.,* No. Civ. A. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002) .14

*Terry v. Tri-State Wireline, LLC,* C.A. 2:15-cv-382-NBF (W.D. Pa. Jan. 8, 2016)................................17

*Thomas v. Allis-Chalmers,* No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) ...............17

*Weiss v. Mercedes-Benz of N Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) ........................................7

*Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1984).........................................................9

*Weiss v. York Hosp.,* 745 F.2d 786, 809-10 (3d Cir. 1984) ..........................................7, 11, 12

*Williams v. Aramark Sports, LLC,* No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) .........................................................................................................17

*Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990)........................................10

**Statutes**

43 P.S. § 333.113 ...........................................................................................18

**Other Authorities**

1 A. Conte & H. Newberg, Newberg on Class Actions (Fourth), § 3.10, at 272-74 (2002) ................10

3 Newberg on Class Actions (Fourth), §7.24 at pp. 78-79 (2002) ..............................................12

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................2

## I.    INTRODUCTION

Plaintiff James Larsen ("Larsen" or "Plaintiff") files this Motion for Final Approval of Class Action Settlement and Attorneys' Fees and Costs ("Motion for Final Approval") and in support would show as follows:

On March 1, 2019, this Court preliminarily approved the parties' settlement set forth in the Settlement Agreement and Release. (the "Agreement"). *See* ECF 24.  Shortly after approval and after fully funding the settlement, Defendant Edgemarc Energy Holdings, LLC ("Edgemarc") sought bankruptcy protection under Chapter 11 in the United States Bankruptcy Court for the District of Delaware.  *See generally* In Re: Edgemarc Energy Holdings, LLC, Case No. 19-1104.  The filing of bankruptcy stayed this proceeding and prevented the parties from complying with this Court's Preliminary Approval Order.  *See* ECF 28.

On July 15, 2020, consistent with the June 23, 2020 Order of John T. Dorsey (*See* Ex. A, ECF 30), this Court lifted the stay, reinstated the case and ordered the parties to comply with the terms of the Agreement.  *See* ECF 32.  The Court also set a Final Approval Hearing for November 3, 2020.  *Id.*

On July 21, 2020 Class Counsel, though CPT Group, the approved claims administrator, sent notice of the settlement to the 51 Settlement Class Members who worked for Edgemarc during the relevant class period.[1]  Declaration of Michael A. Josephson ("Josephson Decl.") attached as Exhibit A at ¶10.  On August 20, 2020, the claims period closed.  Josephson Decl. at ¶11.  As of the close of the class period, 50 of the 51 Settlement Class Members elected to participate.  *Id.* at ¶12.  No objections were served and only one individual (Cliff Sibert) elected to opt-out.  *Id.* at ¶13.  The means that approximately 98% of the Settlement Class Members elected to participate in this settlement.  These individuals will receive 94% of the net settlement amount if this Court grants final approval.

---

[1]      The Class Members were previously identified on Exhibit C to the Parties' Agreement preliminarily approved by this Court.  *See* Ex. C, ECF 23-1.

*Id.* at ¶12.

As shown below, the Agreement is fair, reasonable, and confers a substantial benefit upon the settlement class members. The Agreement resolves a complex case and permits these proceedings to conclude with certainty.  The Agreement, including those provisions applicable to the notice process and claim's administration, has been diligently implemented since the preliminary approval.  The reaction of the settlement class members has been positive.  No objections were filed and only one individual elected to opt-out of the settlement.

Because all of the applicable standards for final approval under Fed. R. Civ. P. 23(e) have been satisfied, Plaintiff requests that the court enter an order granting final approval of the terms of the agreement.

## II.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.  Overview of Terms

#### 1.  SETTLEMENT FUND

The Agreement provides the following relief to the Settlement Class Members:

| | |
|---|---|
| Maximum Settlement Amount: | $1,200,000.00 |
| Attorney Fees: | $420,000.00 |
| Attorney Costs: | $25,000.00 |
| Enhancement Award: | $10,000.00 |
| Settlement Administration Costs: | $25,000.00[2] |
| Net Settlement Amount: | $720,000.00 |

---

[2]  The costs of CPT Group are $11,750.00 and the difference from the amount allocated and incurred will revert to Edgemarc.

2. **ALLOCATION TO THE SETTLEMENT CLASS MEMBERS**

Funds were allocated based on each Settlement Class Member's individual weeks worked, and rates of pay received. Based on the compensation data provided by Edgemarc, Class Counsel determined the back wages owed to each Settlement Class Member. The Net Settlement Amount was the apportioned to each Settlement Class Member, *pro rata*, based on their individual damage calculations. As noted above, the Settlement Class Members will receive 94% of the Net Settlement Amount.

3. **NOTICE PROVISIONS**

To protect the rights of absent class members, the court must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). *See, e.g.*, 4 *Newberg on Class Actions* (Fourth) §§ 8.21, 8.39; *Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004) §§ 21.311-21.312.

The Agreement preliminarily approved by this Court set forth a fair and reasonable notice process which complied with the requirements of Fed. R. Civ. P. 23(e). As shown below, this process was carried out without delay or difficulty as follows:

- On July 21, 2020, Class Counsel, through CPT Group, mailed and emailed the Class Notice Form preliminarily approved by this Court ("Settlement Documents") to the last known contact information of the Settlement Class Members. *See* Josephson Decl., ¶10; Ex. A, ECF 23-1. The Settlement Documents explained to each Settlement Class Member his or her individual share of the settlement based on the pro rata damage calculations conducted by Class Counsel.

- On August 4, 2020, Class Counsel received an Opt-Out Form from Clif Sibert. Josephson Decl. ¶13.

- On August 20, 2020, the claims period closed. 50 out of 51 Settlement Class Members

elected to participate. No objections were received. *Id.* ¶¶12-13.

### 4. RELEASE OF CLAIMS

The Agreement's release language aligns with the assertions in this case. All Settlement Class Members who returned claim forms will release Edgemarc from all wage claims asserted or that could have been asserted in this lawsuit. Importantly, if the Settlement Class Members elected to opt-out or otherwise did not return their claim forms, they will preserve their claims under the FLSA only.

### 5. PAYMENTS UNDER THE SETTLEMENT

All funds required under the Agreement have been funded to the QSF maintained by CPT Group. According to the Agreement, payments will be made by CPT Group no later than thirty (30) days from the Effective Date. This means that the Settlement Class Members should receive their respective shares of the settlement before the holidays.

### B. The Settlement Should Be Given Final Approval By The Court

Plaintiff seeks *final* approval of the Settlement under Fed. R. Civ. P. 23(e). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. The ultimate determination whether a proposed settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424-25 (1968).

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable and adequate. *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 258 (3d Cir. 2009); Fed. R. Civ. P. 23(e). Both Plaintiff and Defendant submit that the terms of the Agreement preliminarily approved by this Court are fair and reasonable and in the best interests of all parties. All of the requirements and standards for final approval have been met or exceeded. The Settlement Class Members' response to the settlement was positive and appreciative. Indeed, not one Class Member

objected to the Settlement and numerous individuals responded favorably to the terms of the Agreement. Thus, Plaintiff submits that final approval is warranted.

## 1. THE STANDARDS FOR FINAL APPROVAL UNDER FED. R. CIV. P. 23

The Third Circuit has set forth nine factors to be considered when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted); *See also In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 301 (3d Cir. 2005). Here, the *Girsh* factors strongly support final approval of the Settlement Agreement.

### a. *There is a Strong Basis to Believe that the Settlement is Fair, Reasonable and Adequate.*

As shown above, the Agreement provides substantial relief to the Settlement Class Members for the weeks worked during the relevant class period. Indeed, the net settlement range in this case, after administration costs, attorneys' fees and costs are deducted is $71,590.91 to $1,022.73. *See* Josephson Decl. at ¶12. The average payment is $14,117.65. *Id.* Further, as set forth in the Agreement, the formulas used to compensate the Settlement Class Members are reasonable, consistent with other wage and other settlements approved by Courts in this district and others, and applied in a manner which does not discriminate against any of the Settlement Class Members.

Further, it is beyond dispute that this settlement was the result of arm's-length negotiations, conducted by experienced counsel for all parties and after more than enough formal and informal discovery had been undertaken. *Id.* at ¶¶6-7. The settlement was negotiated on behalf of Plaintiff by

attorneys who have been vigorously prosecuting this and similar claims for many years. *Id.* at ¶¶2-5

Plaintiff's counsel was particularly well informed as to the facts and circumstances of the litigation. Further, Plaintiff's counsel have represented and currently represent employers in similar cases in many jurisdictions. Thus, the arm's length consideration, which is often shaped by the experience and reputation of counsel, who have researched the issues and are knowledgeable regarding the facts of the litigation, has easily been met. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) ("GM Trucks").; *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

### b.  *Complexity, Expense and Likely Duration of the Litigation*

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, 2014 WL 3447947 , *7 (S.D. Ohio July 11, 2014). They often require, as in this case, the review of countless statutes, regulations, and case law. The parties are required to analyze and litigate issues concerning liability, damages, certification, discovery and a host of other issues which are unique to wage and hour litigation. There are few "bright line" tests, and, as such, this type of litigation can be very challenging and difficult. The complexity of this case was further complicated by the filing of bankruptcy and the navigation of Chapter 11 in addition to the relevant wage and hour issues.

Continued litigation would be long, complex and expensive, and a burden to Court dockets.

*See Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered). A trial on the merits would be very expensive for both parties, and would not even necessarily end the litigation, as the losing party would have the right to appeal. *See In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 642 (E.D. Pa. 2003) (where the protracted nature of the action would cause a lengthy delay in recovery, the "substantial and immediate benefits" to class members favored approval); *Slomovics v. All For a Dollar, Inc.*, 906 F.Supp 146, 149 (E.D.N.Y. 1995) (where litigation had potential to be lengthy, and was likely to be expensive, settlement was in best interest of class members).

Without a settlement, there is no doubt that the parties would continue litigating the lawsuit for quite some time with the same tenacity.

### c.  <u>Stage of Proceedings, Discovery Completed and Risks of Continued Litigation.</u>

Prior to reaching a settlement, the parties had access to a substantial amount of information and testimony pertaining to hours worked, duties performed, Defendant's actual pay and business practices, payroll records, and virtually all of the data for the class.  This information allowed the parties to reach a fair settlement that provides just compensation to the workers.

Further, prior to reaching a settlement, Class Counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages.  While Class Counsel certainly believes that the misclassification claims against Defendant are strong and could be proven at trial, a finding of liability is never assured, especially in complex litigation.  Even with a strong factual and legal case, the Settlement Class Members face significant risks in establishing liability and damages. Further risks exist as they relate to certification of a class and surviving an inevitable appeal. Indeed, substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief for the Settlement Class Members would be obtained.

Additionally, as noted above, after this Court preliminarily approved the settlement, Edgemarc filed bankruptcy which further complicated this proceeding.

### 1)  Plaintiff Faced Risks on the Merits

In this case, Edgemarc alleged it was not liable to Plaintiff or the Class Members because the Settlement Class Members were properly classified as independent contractors.  Edgemarc further claimed that to the extent that the Settlement Class Members were employees, they were exempt under the FLSA, the PMWA and Ohio laws.  In particular, Edgemarc alleged these workers possess and utilize a highly specialized set of skills that allowed them to work with little to no control exerted by Edgemarc. Edgemarc maintained that the class members had extensive job knowledge, exercised discretion and judgment on a daily basis, and were highly compensated.  The risks presented by this defense are not insubstantial.  Accordingly, Edgemarc's allegation that the class members were not entitled to either overtime pay was not without potential merit.

### 2)  Achieving Class Certification is Never Easy

Plaintiff would have faced significant challenges in obtaining (and maintaining) class certification.  Courts in this Circuit and District deny conditional and class certification in many wage cases.  Thus, while Plaintiff certainly believes class certification was appropriate, Plaintiff concedes that he would have faced a "significant challenge to certifying the class outside the settlement context." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007)

### d.  The Reaction of the Class and the Opinions of Class Counsel

Here, Class Counsel and James Larsen support the settlement and believe that it's fair and in the best interests of all parties.  Class Counsel's opinion is validated by the fact 98% of the Settlement Class Members have agreed to participate in the settlement.  Further, in addition to the participation and high average settlement value, Class Counsel and his staff have also had the opportunity to communicate with numerous Settlement Class Members concerning the settlement, the claim value,

and the litigation as a whole.  These discussions have confirmed that the Settlement Class Members are pleased with the settlement and support its final approval.  This is further evidenced by the fact that **no** objections were received and only one class member elected to opt-out.  *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993) (noting that it is generally appropriate to assume that "silence constitutes tacit consent to the agreement" in the class settlement context); *In re Processed Egg Products Antitrust Litig.*, No. 08-md-2002, 2012 WL 2885924, at *18 (July 18, 2012) (holding that no objections supports final approval of settlement).

## III.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Pursuant to the Agreement, and in accordance with the model of other similar wage and hour cases that counsel have resolved in the federal courts, Plaintiff seeks final certification of the following class:

> All Current and former Company Men who worked on projects for Edgemarc Energy Holdings, LLC who performed work at any time between September 15, 2015 and March 24, 2019.

A case may be certified as a class action under Rule 23 only when:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), cert. denied, 470 U.S. 1060 (1985).  These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

### A.  The Elements of Rule 23(a) are Satisfied for Settlement Purposes

#### 1.  NUMEROSITY UNDER RULE 23(A)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.RD. 65, 73 (D.N.J. 1993) ("precise enumeration of the members of a class is not necessary."); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity."). Numerosity is satisfied here because the Settlement Class includes 51 individuals. *See Slanina v. William Penn Parking Corp.,* 106 FRD 419, 423 (WD PA 1984) (certifying class of 25 persons); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of class of at least 31 individual class members).

## 2. COMMONALITY UNDER RULE 23(A)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if plaintiff's grievances share common questions of law or of fact. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). A plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case. "Factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F .3d at 56; *Prudential II*, 148 F.3d 283. Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See* 1 A. Conte & H. Newberg, Newberg on Class Actions (Fourth), § 3.10, at 272-74 (2002); accord *Baby Neal*, 43 F.3d 56. Commonality exists where the class claims arise "from a 'common nucleus of operative fact' regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984). As the Third Circuit has noted, this requirement is "not a high bar." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004). According to Plaintiff, commonality is met here insofar as the claims of the Class Representative and the members of the class are predicated on the core common issue as to whether Defendant's properly classified its Company Men as independent contractors. At least in the settlement context, this is sufficient to meet the Rule 23(a)(2) standard of commonality. Specifically, Plaintiff, like his co-workers, was treated as a independent contractor, paid

a day rate and did not receive additional compensation for any hours worked over forty in a workweek. Thus, based on his work experiences and allegations against Defendant, the commonality element is satisfied.

### 3. TYPICALITY UNDER RULE 23(A)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.l3 (1982). The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *Id.*; *Prudential II*, 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litigation*, 104 F.R.D. at 429-30. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir.1997). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory." *Hayworth v. Blondery Seagraves & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). In other words, typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 (3d Cir. 1984). Here, too, this requirement is met by the proposed Settlement Class to the extent that the claims, for settlement purposes only, arise from a common course of conduct alleged by Plaintiff, e.g., Defendant's alleged practice of failing to compensate the Settlement Class Members for all hours worked as a result of the uniformly applied compensation practice applicable to all Company Men during the relevant class period.

### 4. ADEQUACY UNDER RULE 23(A)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit has ruled that:

> Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.

*Weiss*, 745 F.2d at 811, quoting *Wetzel.*, 508 F.2d at 247; *see also Prudential II*, 148 F.3d at 312. These two components are designed to ensure that absentee class members' interests are fully pursued. The existence of the elements of adequate representation are presumed and "the burden is on the defendant to demonstrate that the representations will be inadequate." *Asbestos School Litigation*, 104 F.R.D. at 430, *citing Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) (quoting 3 Newberg on Class Actions (Fourth), §7.24 at pp. 78-79 (2002)).

Adequacy is easily met here with regard to the Class Counsel's qualifications – Plaintiff's attorneys, proposed Class Counsel, are very experienced and competent in complex litigation and have an established track record in wage and hour cases. *See* Josephson Decl. at ¶ at ¶¶2-5. In addition, there is no evidence that the Class Representative has interests inconsistent to that of the settlement class. Indeed, Plaintiff has dutifully assisted his Counsel in this case and meets the criteria for participation in this settlement. Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here for settlement purposes only, Plaintiff now turns to consideration of the factors which, independently, justify class treatment of this action for present purposes under subdivision 23(b)(3) of the rule.

### B. The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes

Final certification is appropriate under Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the
> class predominate over any questions affecting only individual members, and that
> a class action is superior to other available methods for the fair and efficient
> adjudication of the controversy. The matters pertinent to the findings include: (A)
> the interest of members of the class in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already commenced by or against members of the class; (C) the
> desirability or undesirability of concentrating the litigation of the claims in the
> particular forum; (D) the difficulties likely to be encountered in the management
> of a class action.

Fed. R. Civ. P. 23(b)(3).

For the reasons discussed above, Plaintiff believes that the Settlement Class satisfies the predominance requirement. Moreover, allowing the Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions asserting claims under state statutory wage and overtime laws paralleling the FLSA. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).

Accordingly, Plaintiff respectfully requests that the Court finally certify the Settlement Class for settlement purposes only.

## IV.    THE COURT SHOULD GIVE FINAL APPROVAL TO THE ENHANCEMENT AWARD FOR JAMES LARSEN

Defendant has agreed to pay James Larsen $10,000.00 as an Enhancement Award for his efforts in bringing and prosecuting this matter.  This amount will be paid in addition to his recovery of unpaid overtime for the time when he worked for Edgemarc in a covered position.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). It is particularly appropriate to compensate plaintiffs

with incentive awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. *Tenuto v. Transworld Sys., Inc.*, No. Civ. A. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002).[3] Indeed, "[i]t takes courage for any employee to challenge her employer's workplace practices. . . ." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015). For these reasons, the additional payment to Mr. Larsen should be finally approved as fair and reasonable.

## V.    FINAL APPROVAL OF ATTORNEYS' FEES AND COSTS

Pursuant to Rule 23(h) and Rule 54(d)(2), Class Counsel seeks an award of attorneys' fees in the amount of $420,000.00 and costs in the amount of $25,000.00. Defendant does not oppose this request.

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted). When calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing

---

[3]    *See Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"). The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g., Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011) (approving service payments of $10,000 to each of eight named plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery Scott LLC Financial Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *12 (E.D. Pa. Jul. 16, 2009) (approving $20,000 enhancement awards for each of three named plaintiffs in wage and hour settlement).

*Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs.* 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *Prudential,* 148 F.3d at 342).

These factors support approval of the requested fee and are discussed below.

### A. The Size of the Fund Created, the Number of Beneficiaries and the Value of the Benefits Conferred Support the Fees Requested

The results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. Here, the $1,200,000.00 settlement provides for a Net Settlement Fund that will be distributed to Settlement Class Members on a *pro rata* basis. As noted above, individuals will receive on average over $14,000.00 and the Settlement Class Members will claim approximately 94% of the Net Settlement Fund.

More specifically, the settlement is based on an analysis of each workweek that each Settlement Class Member worked for Edgemarc in a covered position during the relevant time period. The Maximum Settlement Amount represents a substantial portion of unpaid overtime damages owed to Settlement Class Members. For these reasons, the Agreement provides a substantial benefit for members of the Settlement Class.  Josephson Decl. ¶15

**B. The Skill and Efficiency of Class Counsel Led to the Results Obtained and Justify the Fee Requested**

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience. Josephson Decl. ¶ at ¶¶2-5. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery.

The Agreement was reached after (1) extensive fact discovery, including extensive written discovery, depositions, motion practice and countless hearings and phone calls; and (2) conducting an in-depth analysis of potential damages.

The Agreement provides Plaintiff and the Settlement Class Members with substantial benefits without having to wait for years of drawn out litigation. Accordingly, this factor favors the requested fee.

**C. Awards in Similar Cases Supports the Requested Fee**

The requested fee is also consistent with awards in similar cases. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund. *See Brumley v. Camin Cargo Control, Inc.,* No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) (approving fee of one-third of the common fund and citing *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)).

Here, Class Counsel's request for thirty-five percent of the Settlement falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. *See, e.g., Rollison*

*v. X-Chem, LLC, et al.*, C.A. 2:15-cv-43-MRH (W.D. Pa. Mar. 16, 2016) ECF No. 44, *3 -(approving 35% attorney fees); *Kirk v. DR Well Site Services, LLC, et al.*, C.A. 1:15-cv-116-BR (W.D. Pa. Nov. 22, 2016) ECF No 57 approving ECF No. 55. (approving 35% attorney fees); *Terry v. Tri-State Wireline, LLC,* C.A. 2:15-cv-382-NBF (W.D. Pa. Jan. 8, 2016) ECF No 31, *3 - Paragraph 12 (approving 35% attorney fees); *Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-130-MRH (W.D. Pa. Oct. 30, 2015) ECF No. 43 approving ECF No. 42. (approving 35% attorney fees); *Hart, et al., v. KSW Environmental, LLC.*, C.A. 2:15-cv-659-AJS (W.D. Pa. May 24, 2016) ECF No. 44 *3 - Paragraph 11 (approving 35% attorney fees); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (Eddy, J.) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) (same); *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) (same); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (approving an award of 32.6% of the Settlement fund); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *see also Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (concluding "that an award of one third of the Settlement fund is reasonable in consideration of other courts' awards"); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and median award was 33.3%). The attorneys' fees request of thirty-five percent of the Settlement fund also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

### D.  Class Counsel's Costs Should Be Approved

In addition to being entitled to reasonable attorneys' fees, the relevant wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b); 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

Here, Class Counsel's costs are currently $36,056.13 Josephson Decl. at ¶16. Class Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, service, travel for hearings and mediation, mediation expenses, transportation and bankruptcy expenses. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund–*pro hac vice*" to be reasonable).

All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement.  Even though Class Counsel's expenses are $36,056.13, Class Counsel is <u>only</u> seeking $25,000.00 as contemplated by the Agreement.

Edgemarc does not object to the request for costs.

### E.  The Positive Response of the Settlement Class Members Justifies the Fees and Costs Requested

Notice of the Settlement has now gone out to all the Settlement Class Members. The Settlement Documents explicitly outline the allocation of the settlement and provides instructions for objecting to or seeking exclusion from the settlement. To date, none of the individuals who received the Notice have submitted objections and only one person opted out.  Accordingly, this factor supports the reasonableness of the fee award and costs requested.

### F. Approval of the Claims Administration Costs

Plaintiff also seeks final approval of the costs incurred by CPT Group to facilitate the issuance of notice to the Settlement Class Members in addition to the costs they will incur in the disbursement of payments to the Settlement Class Members and the corresponding tax documents. The amount to be approved is $11,750.00. Josephson Decl. at ¶18

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion and finally approve the terms of the Agreement, including the provisions for attorneys' fees, costs, and the enhancement award.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
PA Bar No. 308410
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I served this document on all parties on October 23, 2020 via the Court's electronic filing system.

*/s/ Michael A. Josephson*


## CERTIFICATE OF CONFERENCE

I have conferred with Counsel for Edgemarc and they are NOT OPPOSED to the relief sought.

*/s/ Michael A. Josephson*